UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Pamela Deso,

     Plaintiff,

     v.                                                                           Civil Action No. 2:10-CV-223

Michael J. Astrue, Commissioner of
Social Security Administration,

     Defendant.

## OPINION AND ORDER
(Docs. 16, 23)

     Plaintiff Pamela Deso brings this action under 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Deso's motion to reverse the decision of the Commissioner (Doc. 16), and the Commissioner's motion to affirm the same (Doc. 23).

     For the reasons stated below, the Court GRANTS Deso's motion, and DENIES the Commissioner's motion.

## Background

     Deso was forty-one years old on the alleged disability onset date of May 19, 2007[1]. (Administrative Record ("AR") 24-25, 117.) She has a high school education,

---

[1] In her written application, Deso set forth an alleged disability onset date of January 15, 2006. (AR 117, 132.) At the administrative hearing, however, her counsel changed the date to May 19, 2007, stating that was the date on which Deso had last worked. (AR 24-25.) The ALJ does not acknowledge the amended onset date in his decision, but the error appears to have been harmless, and Deso does not seek remand on this basis.

and work experience stocking shelves at Price Chopper and doing housekeeping at the Econo Lodge and the Cadillac Motel. (AR 24, 133, 136, 160.) The record, including Deso's testimony at the administrative hearing, demonstrates that Deso suffers from chronic obstructive pulmonary disease ("COPD"), hip pain, balance problems, sleep problems, fatigue, tremors, and foot problems.

In June 2008, Deso filed applications for disability insurance and supplemental security income benefits, alleging disability as of January 15, 2006. (AR 117-24.) Pursuant to her disability application, Deso claims that she is unable to work as a result of her COPD and a dislocated hip. (AR 132.) She explains that she "ha[s] a hard time breathing" and "must stop often to take [her] medicine." (*Id.*) Deso's application was denied initially and on reconsideration, and she timely requested an administrative hearing. (AR 49-67.) On April 9, 2010, Deso appeared and testified at the hearing, and was represented by counsel. (AR 20-48.) In addition, vocational expert ("VE") Christine Spaulding testified at the hearing. (AR 39-47.)

On June 2, 2010, Administrative Law Judge ("ALJ") Thomas Merrill issued a decision finding that Deso had not been under a disability, as defined in the Social Security Act, from her alleged disability onset date through the date of the decision. (AR 15.) Thereafter, the Decision Review Board informed Deso that it had not completed its review during the prescribed period, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Deso filed the Complaint in this case on September 28, 2010. (*See* Doc. 3.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this five-step analysis, ALJ Merrill first determined that Deso had not engaged in substantial gainful activity since her alleged onset date. (AR 10.) At step two, the ALJ found that Deso had the severe impairment of COPD, but that Deso's hip disorder was non-severe. (*Id.*) At step three, the ALJ found that Deso did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*) Next, the ALJ determined that Deso had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(a), except that she was "limited to walking for four hours in an eight[-]hour workday, and standing and sitting for six hours each in an eight[-]hour workday." (*Id.*) The ALJ further determined that Deso had an unlimited ability for pushing and pulling activities, could only occasionally climb, and could only frequently do "the rest of the postural activities." (*Id.*) Finally, the ALJ determined that Deso must avoid "concentrated exposure to cold and workplace hazards." (*Id.*)

At step four, based on the VE's testimony, the ALJ determined that Deso was capable of performing her past relevant work as a housekeeper. (AR 13-14.) Alternatively, at step five, again based on testimony from the VE, the ALJ found that there were other jobs existing in significant numbers in the national economy that Deso was able to perform, including cashier, fast food worker, and sales attendant. (AR 14.) The ALJ concluded that Deso had not been under a disability, as defined in the Social Security Act, from her alleged onset date through the date of the decision. (AR 15.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the

Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

### I. Credibility Determination

In determining that Deso's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ placed considerable emphasis on Deso's failure to stop smoking. (AR 12-13.) Specifically, the ALJ made the following statements:

- "Despite [Deso's] COPD diagnosis, she has not quit smoking cigarettes. She was frequently advised to cease smoking." (AR 12.)

- [Deso's] failure to cease smoking despite her COPD cuts against the strength of her allegations. (*Id.*)

- "[Deso] continues to smoke cigarettes, . . . which cuts against the strength of her allegations. This supports the conclusion that she retains a substantial [RFC] and runs counter to a finding of disability." (AR 12-13.)

It was legal error for the ALJ to base his negative credibility determination primarily on Deso's failure to stop smoking, and to find that Deso's failure to stop smoking indicated that her COPD-symptoms were mild. *See Waters v. Astrue*, No. 5:10-CV-110, 2011 WL 1884002, at *7 (D. Vt. May 17, 2011). Although there is evidence

6

that cigarette smoking causes COPD[2] and that most people who have COPD smoke or used to smoke, *Gibson v. Astrue*, No. 1:09-CV-677-AJB, 2010 WL 3655857, at *3 n.9 (N.D. Ga. Sept. 13, 2010) (citing http://www.nhlbi.nih.gov/health/dci/Diseases/Copd/ Copd_WhatIs.html (last visited August 4, 2010)), as this Court recently stated in *Waters*, "some people with COPD continue to smoke solely because of their addiction to nicotine," *Waters*, 2011 WL 1884002, at *7. Therefore, an ALJ errs in finding that a claimant's failure to stop smoking automatically supports a negative credibility determination or a conclusion that the claimant's breathing symptoms are not severe. *Id.* The Seventh Circuit explained:

> Given the addictive nature of smoking, the failure to quit is . . . likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer - directly caused by smoking - who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the products impacts their ability to stop. *This is an unreliable basis on which to rest a credibility determination.*

*Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000) (emphasis added). Moreover, in this case, the record demonstrates that Deso reduced her smoking from one pack a day in August 2006 to one-half a pack a day in January 2009, and that she was "working on quitting" in January 2009. (AR 208, 225.) By the time of the hearing in April 2010, Deso testified that she was "down to five cigarettes a day" and was "trying to quit." (AR 47.) The ALJ does not mention these facts in his decision.

---

[2] "COPD is 'a progressive disease that makes it hard to breathe. "Progressive" means the disease gets worse over time. COPD can cause coughing that produces large amounts of mucus (a slimy substance), wheezing, shortness of breath, chest tightness, and other symptoms.'" *Waters*, 2011 WL 1884002, at *3-4 (quoting *Gibson*, 2010 WL 3655857, at *3 n.9).

7

More importantly, however, the ALJ failed to make a specific credibility determination regarding the important issue of Deso's need to use a nebulizer during the alleged disability period. At the administrative hearing, Deso testified that she used a nebulizer "[l]ike every three hours" and that it took "at least 25 minutes" for her to set up and use the nebulizer. (AR 32-33.) She further testified that, while she was working as a housekeeper at the Econo Lodge, she would have to take "unscheduled breaks" to use the nebulizer; and that, as of the date of the administrative hearing (April 2010), she was using the nebulizer "[l]ike four to five times a day," and it was "sometimes" unpredictable when she would have to use it. (AR 33.) In his decision, the ALJ acknowledged this testimony, stating:

> [Deso] has to use her nebulizer every two hours[3] and this requires her to breathe in the medicine for fifteen minutes after taking ten minutes to set up; she had to bring her nebulizer to work as a housekeeper and she took unscheduled breaks to use it; she now uses the nebulizer 4-5 times per day and cannot predict when she will need it . . . .

(AR 11-12.) Despite this acknowledgment, the ALJ's decision does not state whether he found Deso's testimony regarding use of the nebulizer credible. It can be deduced from the ALJ's decision that he found such testimony *not* credible, given his determination that Deso was able to work despite the VE's testimony that "there would be no jobs" if Deso had to "take unscheduled breaks to use a nebulizer" for twenty-five minutes at a time. (AR 45.) But the ALJ should have explained and defended his credibility assessment with respect to Deso's critical and unrefuted testimony about having to take "unscheduled

---

[3] The record does not support the ALJ's statement that Deso needed to use her nebulizer "every two hours." (AR 12.) It is unclear whether this was a typographical error or whether the ALJ misunderstood the record. Either way, the error will be corrected on remand when the ALJ reevaluates Deso's testimony regarding her nebulizer use.

8

breaks" of twenty-five minutes at a time to use a nebulizer.[4]  This testimony is at least partially supported by the treatment records and opinions of treating physician Dr. Toby Sadkin, who prescribed a nebulizer starting in August 2006 (AR 208 ("[Deso] was set up with home nebulizer and instructed upon it's [sic] use.")), and opined that Deso was required to use the nebulizer "frequent[ly]" (AR 246).  Moreover, the three agency consultants who reviewed the medical evidence and offered opinions regarding Deso's claim did not opine about Deso's use of a nebulizer.  (*See* AR 214-21, 222-23, 236.)

For these reasons, it is concluded that the ALJ erred in his credibility determination.  The ALJ placed excessive weight on Deso's continued cigarette smoking as the principal reason for discounting her credibility.  Moreover, the ALJ failed to assess Deso's credibility with respect to how frequently she needed to use a nebulizer.  These errors, taken together, are grounds for remand, as the ALJ's ultimate decision that Deso was not disabled heavily relied on his credibility determination, given that the record contains limited medical evidence of treatment and medical opinion evidence.

## II.     Assessment of Dr. Sadkin's Opinion

The ALJ stated that he gave "some weight" to the opinion of treating physician Dr. Sadkin.  (AR 13.)  The sole stated reason for the ALJ's decision not to assign more weight to Dr. Sadkin's opinion was that the opinion was "not supported by [Dr. Sadkin's] own treatment notes or the medical record in general."  (AR 13.)  In support of this

---

[4]  Deso argues that Dr. Sadkin opined that Deso "had to use the nebulizer 'as needed'" (Doc. 24 at 2), but the record does not support this description of Dr. Sadkin's opinion.  Rather, Dr. Sadkin opined that Deso was required to use the nebulizer "every 2-4 hours" and "frequent[ly]" (AR 244, 245-47).  His treatment notes, on the other hand, reveal that he prescribed use of the nebulizer for Deso only "every four hours, as needed" (*see* AR 203 ("q. 4 hours p.r.n."), 205 ("up to every four hours"), 208 ("Q4H PRN")), meaning every four hours, *or less*, if not needed that frequently.

9

finding, the ALJ explained: "[Dr. Sadkin's] own treatment notes indicate stable symptoms and noncompliance with recommendations to stop smoking." (*Id.*) This analysis was insufficient and legally erroneous.

First, a claimant's "stable" symptoms do not necessarily indicate that he or she is capable of working, or even that his or her symptoms are mild. As the Third Circuit stated: "[A] doctor's notation that a condition is 'stable' during treatment does not necessarily support the conclusion that the patient is able to work." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3rd Cir. 2008). Second and more importantly, the ALJ's decision to afford less weight to Dr. Sadkin's opinion on the grounds that the Doctor's treatment notes indicate "noncompliance with recommendations to stop smoking," was improper. The applicable regulation provides as follows:

> In order to get benefits, you must follow treatment prescribed by your physician *if this treatment can restore your ability to work*. . . . If you do not follow the prescribed treatment *without a good reason*, we will not find you disabled . . . .

20 C.F.R. § 404.1530(a) and (b) (emphases added). Not only did the ALJ fail to mention this regulation, but he also failed to cite any evidence in the record indicating that Deso's ability to work would be restored, or even that her condition would improve, if she were to stop smoking. The Seventh Circuit has held that, "[e]ssential to a denial of benefits pursuant to 20 C.F.R. § 404.1530 is a finding that if the claimant followed her prescribed treatment she could return to work." *See Shramek v. Apfel*, 226 F.3d 809, 812 (7th Cir. 2000) (quotation marks omitted). Here, the ALJ made no finding that quitting smoking would restore Deso's ability to work, and there is no evidence in the record to support

10

such a finding. Although the record reveals that medical providers, including Dr. Sadkin, recommended that Deso cease smoking; no medical provider stated that if Deso did so, her symptoms would be eliminated or reduced to such an extent that she could return to work. And in fact, the record appears to reflect that, as Deso's cigarette use decreased, her COPD symptoms progressed. Specifically, a January 2009 medical note indicates that Deso was seen by Dr. Sadkin for "worsening symptoms of [COPD]" despite cutting cigarette smoking back to "1/2 ppd." (AR 225.)

Accordingly, the ALJ erred in relying on Deso's failure to quit smoking as a reason for giving less weight to Dr. Sadkin's opinion, and this is an alternative grounds for remand. *See Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("Failure to provide . . . 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.") (quotation marks and citations omitted). On remand, if the ALJ opts not to afford "controlling weight" to Dr. Sadkin's opinion, he should evaluate the opinion pursuant to the factors set forth in 20 C.F.R. § 404.1527(d)(2), keeping in mind that Dr. Sadkin had a treating relationship with Deso while the agency consultants did not.

## III.  Development of Record

Deso argues that the ALJ failed in his duty to develop the record, and more specifically, that the ALJ should have sought and obtained the February 2010 report of treating neurologist Dr. Andres Roomet and the more current treatment notes of Dr. Sadkin prior to issuing his decision. It is the rule in the Second Circuit that "the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record in light of the

11

essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quotation marks omitted). This duty arises from the Commissioner's regulatory obligation to develop a complete medical record before making a disability determination, and exists even when the claimant is represented by counsel. *Id.* (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *see Baker v. Bowen*, 886 F.2d 289, 292 n.1 (10th Cir. 1989) ("[T]he ALJ . . . has the affirmative duty to fully and fairly develop the record regardless of whether the applicant is represented by an attorney or a paralegal.") On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 48). Thus, the ALJ must "*develop* the record, not . . . *create* it." *Jones v. Bowen*, 699 F. Supp. 693, 697 n.8 (N.D. Ill. 1988). The regulations describe the ALJ's duty to develop the record as follows: "Before we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d).

In this case, the ALJ did not fulfill his duty to develop the record. Before making his decision, the ALJ properly took measures to ensure that the record was complete. At the administrative hearing, the ALJ informed Deso and her representative that he did not have the records from Dr. Roomet. (AR 26 ("I have none of those records.").) He further advised Deso and her representative that he would hold the record open for five

days so that the records could be submitted. (AR 23, 26.) Deso's representative confirmed that she would submit them, stating: "Yes, I certainly will." (AR 26.) She further advised the ALJ that she would be submitting "updated treatment notes from Dr. Sadkin" "promptly today." (*Id.*) It appears this evidence was never submitted to the ALJ.

In general, where, as here, the ALJ has held the record open for a certain period for the submission of additional evidence and no evidence is submitted during that period, the ALJ cannot be found to have failed in his duty to adequately develop the record. *See Tidwell v. Apfel*, 161F.3d 599, 602 (9th Cir. 1998) (finding that ALJ adequately developed record by keeping it open for submission of additional evidence); *Leitch v. Comm'r of Soc. Sec.*, No. 07-3863 (JAG), 2009 WL 243167, at *15 (D. N.J. Feb. 2, 2009) (finding that ALJ fulfilled duty to develop record by keeping it open "for an extensive amount of time" for submission of additional evidence, and noting that ALJ was not required to send letter to claimant or claimant's attorney indicating that evidence had not been received). However, this case is unique in that, after the hearing and prior to the ALJ issuing a decision, the ALJ received a letter from Deso's representative which referenced specific evidence that was discussed at the hearing (AR 26) but was not contained in the record, revealing the representative's mistaken belief that such evidence had been added to the record after the hearing. (AR 194 ("Ms. Deso presented to Dr. Roomet on February 24, 2010 to evaluate her poor balance and tremor. . . . Dr. Roomet indicated that she walks with a limp possibly because of the disparity in leg size. Dr. Roomet also documented activity-induced dystonia of the right hand.") This should have

13

prompted the ALJ to contact Deso's representative to seek that evidence, which included Dr. Roomet's February 2010 report. None of the cases cited by the Commissioner address this scenario. On remand, the ALJ should consider Dr. Roomet's report, as well as Dr. Sadkin's more recent treatment notes, which are attached as Exhibit A to Deso's motion (*see* Doc. 16-3).

## IV. Pulmonary Function Test Results

Both parties discuss September 2008 and February 2009 pulmonary function test results in their memoranda, asserting that they bolster their respective positions. (*See* Doc. 16-1 at 7-9, 12, 16-17; Doc. 23 at 14, 20-21; Doc. 24 at 1 (citing AR 213, 233).) But no medical provider, examining or consulting, appears to have interpreted these test results. Certainly neither the ALJ nor this Court is competent to interpret and apply these results, which consist of raw, technical medical data. *See Berrios v. Sec'y of Health and Human Servs.*, 796 F.2d 574, 576 (1st Cir. 1986) ("We cannot decipher the medical jargon in this report and we do not understand the significance of the various clinical tests. We do not think the Appeals Council, composed of lay persons, was competent to interpret and apply this raw, technical medical data."). On remand, the ALJ is instructed to obtain a medical adviser to review and interpret the results of Deso's pulmonary testing, in an effort to assist the ALJ in assessing the severity of Deso's COPD and determining Deso's RFC. *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 408 (1971) (upholding use of medical adviser, and noting that "[t]he trial examiner is a layman; the medical adviser . . . is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner"); 20 C.F.R. §

404.1527(f)(2)(iii).

## Conclusion

For these reasons, the Court GRANTS Deso's Motion (Doc. 16), and DENIES the Commissioner's Motion (Doc. 23).  Accordingly, the Court REVERSES the decision of the Commissioner and REMANDS under sentence four of 42 U.S.C. § 405(g) for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 29th day of November, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge